**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DANIEL JONES,

                                        Plaintiff,

                v.                                                     No.  9:19-CV-0025
                                                                              (BKS/CFH)
ANN MARIE T. SULLIVAN, et al.,

                                        Defendants.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

DANIEL JONES
C22582
CNYPC
P.O. Box 300
Marcy, New York 13403
Plaintiff pro se

HON. LETITIA JAMES                          NICHOLAS LUKE ZAPP, ESQ.
Attorney General for the                    Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants
Sullivan, Tope, Grant, McCulloch,
Nowicki, Dill, Moskal, Herrmann,
Schuyler, and Tirado

WILSON ELSER MOSKOWITZ                       PETER A. LAURICELLA, ESQ.
EDELMAN & DICKER LLP                         NICOLE E. HAIMSON, ESQ.
200 Great Oaks Boulevard
Suite 228
Albany, New York 12203
Attorneys for Defendant
Sarah M. Fallon

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff <u>pro se</u> Daniel Jones ("Jones" or "Plaintiff") commenced this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983. <u>See</u> Dkt. No. 9 ("Am. Compl."). Jones, who is presently confined at the Central New York Psychiatric Center ("CNYPC") pursuant to Article 10 of the New York Mental Health Law ("MHL"), contends that Defendants deprived him of his constitutional rights under the First Amendment. <u>See generally</u> Am. Compl.

## I.  BACKGROUND

### A. Procedural History

On January 7, 2019, Jones commenced this action with the filing of a <u>pro se</u> civil rights complaint. <u>See</u> Dkt. No. 1. On June 5, 2019, Jones filed an Amended Complaint. <u>See</u> Am. Compl. In a Decision and Order filed on August 1, 2019 (the "August Order"), the Court reviewed the Amended Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and directed defendants Sarah M. Fallon ("Fallon"), Ann Marie T. Sullivan ("Sullivan"), Danielle Tope ("Tope"), Jill Grant ("Grant"), Deborah J. McCulloch ("McCulloch"), Jeff Nowicki ("Nowicki"), Danielle Dill ("Dill"), Alyssa Moskal ("Moskal"), Danielle Herrmann ("Herrmann"), Robert Schuyler ("Schuyler"), and F. Tirado ("Tirado")[2] to respond to the First Amendment claims. <u>See</u> Dkt. No. 10 at 28. In lieu of an answer, Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint.

---

[1]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2]  Defendant Tirado was incorrectly sued herein as "Tuado". The Clerk of the Court is respectfully directed to amend the docket accordingly.

See Dkt. Nos. 36 (Fallon) and 38 (remaining Defendants).  Plaintiff has not responded to the motions.  For the following reasons, it is recommended that Defendants' motions to dismiss be granted.

## B.  Facts

The facts are related herein in the light most favorable to Jones as the non-moving party.  See subsection II.A., infra.  At all relevant times, Jones was confined at CNYPC. See generally Am. Compl.

In 1992, Plaintiff was convicted of attempted rape, burglary, and sexual abuse.  See Am. Compl. at ¶ 25.  Plaintiff was sentenced to a term of imprisonment of ten to twenty years and remanded to the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  See id.  On March 5, 2012, four days before his maximum release date, the Office of the New York State Attorney General filed a petition seeking an Order finding probable cause to find that Plaintiff was a sex offender requiring civil management pursuant to Article 10 of the MHL.  See id. at ¶ 26.  During the Article 10 proceedings, Jones was represented by counsel from Mental Health Legal Services ("MHLS").[3]  See id. at ¶ 29.  On April 12, 2012, MHLS requested to be relieved of counsel, citing a "conflict of interest."[4]  Id.  The court granted the request and appointed new counsel.  Id.  On November 21, 2017, the petition was granted and, on December 6, 2017,

---

[3]  Pursuant to MHL §§ 47.01 and 47.03, MHLS is required to provide legals services and advice to persons receiving care at inpatient and community-based facilities for the mentally disabled and to inform the patients or residents of their rights to judicial review.  See Am. Compl. at ¶ 31.

[4]  Jones does not explain the nature of the "conflict of interest" in the Amended Complaint.

Jones was transferred from DOCCS' custody to CNYPC.  See id. at ¶ 28.

### 1. Legal Representation and MHLS

Upon Jones' arrival at CNYPC, he spoke with MHLS counsel, Michael H. McCormick ("McCormick")[5].  Am. Compl. at ¶ 30.  McCormick advised Jones that, due to the conflict of interest, MHLS' representation would be limited to answering legal questions.  See id.  In June 2018, Jones corresponded with McCormick regarding his petition for discharge and his annual hearing.  See id. at ¶¶ 37; Dkt. No. 9-1 at 25.  McCormick consulted with the "supervising attorney," Fontino,[6] and filed a motion in state court for assignment of "other counsel" for Jones' annual hearing due to a "conflict of interest."  Id. at ¶¶ 39, 78.  In August 2018, the state court assigned an attorney to represent Jones at his annual review. Id. at ¶¶ 41, 78.

In October 2018, Jones called McCormick and advised him that the court-appointed attorney would no longer represent him and that he needed counsel for his OMH psychiatric examination.  See Am. Compl. at ¶¶ 46, 47.  McCormick informed Jones that his office would not be able to appear with him at the examination.  See id. at ¶ 47.  In November 2018, McCormick advised that an email was sent to the state court seeking new counsel for Jones at his pending annual review.  See id. at ¶ 50.  McCormick advised Jones, "that was all that their office could do for [him]."  Id.  During this time, despite the

---

[5]  McCormick is no longer a defendant in this action.  See Dkt. No. 10 at 19.  Fallon contends that McCormick was an MHLS employee and Jones' "assigned counsel."  Dkt. No. 36-1 at 4.

[6]  Fontino is no longer a defendant in this action.  See Dkt. No. 10 at 19.

fact that MHLS was no longer representing Jones, MHLS did not notify OMH, and continued to accept legal papers on Jones' behalf.  See id. at ¶¶ 44, 53.

### 2.  CNYPC Law Library and Policies

In the Amended Complaint, Jones discusses CNYPC's law library and policies pertaining to photocopies and the use of the telephone, stating first that the law library is a multi-purpose room that is also used as a social room.  See Am. Compl. at ¶ 94.  The legal materials are outdated and residents do not have access to encyclopedias, typewriters, operable computers, writing materials, or a telephone book.  See id. at ¶¶ 94-95.  If a resident wants to photocopy legal materials, he must complete a confidentiality waiver consenting to the review of the materials.  See id. at ¶¶ 99, 118.  If the resident has limited or insufficient funds to make copies, there is no policy to address those concerns.  See id. at ¶¶ 98, 130.  The telephone policy at CNYPC requires residents to prepare a "telephone list" with preapproved telephone numbers.  Id. at ¶ 110.  At times, the approval process takes days or weeks and a resident is only permitted to add numbers once every three months.  See id. at ¶ 110.  When an attorney telephones a resident, counsel is advised to leave a message.  See id. at ¶¶ 110-12.  If the attorney is not on the resident's pre-approved list, the resident must request a telephone slip from staff and submit the telephone number to a supervisor for approval.  See id.  This process may take one to several days and, in the interim, the resident is not permitted to return counsel's telephone call.  See id.

Jones wrote letters to various officials and staff members, including Commissioner

Sullivan, the Executive Director of CNYPC (McCulloch), the Chief of Mental Health

Treatment Services (Nowicki), and the Deputy Director of CNYPC (Dill), complaining about

the law library, photocopy policy, confidentiality issues, and telephone policy.  See Am.

Compl. at ¶¶ 116-18, 120-21, 123, 125-26; Dkt. No. 9-1 at 4-8, 11-13, 18-21.  Plaintiff

received responses from McCulloch; defendant Grant, the Inpatient Director of Risk

Management; and defendant Tope, the Director of the Sex Offender Treatment Program

("SOTP").  See Am. Compl. at ¶¶ 119, 122, 124; Dkt. No. 9-1 at 9, 10, 14, 16-17, 23-24.

### 3.  Legal Mail Issues

During a telephone conversation on February 6, 2019, Jones' court appointed

attorney advised Jones that he forwarded a letter to him, dated January 29, 2019, but that

the letter was returned stamped, "refused unable to forward."  Am. Compl. at ¶ 57.  Jones

never received or refused the correspondence.  See id.  On February 22, 2019, Jones

received a letter from his attorney with a copy of the envelope from the January 29, 2019

correspondence and two court orders.  See id. at ¶ 59.  The envelope was addressed

properly and marked, "refused unable to forward."  Id.  Plaintiff alleges that he wrote a letter

to McCulloch regarding nonreceipt of his legal mails, and that Moskal responded to his

letter on February 13, 2019.  See id. at ¶¶ 60-61.

On February 19, 2019, "the package room staff" delivered a legal package to Jones.

Am. Compl. at ¶ 62.  The package should have contained legal materials and was marked

for "two day" delivery.  Id. at ¶¶ 62-63.  Upon inspection, Jones noted that one of the

corners was not secure.  See id.  Jones opened the package in the presence of staff and

6

found nothing inside.  See id.  On March 25, 2019, Jones received a package, with legal papers, that had been opened.  See id. at ¶ 68.  Jones was told that the package was delivered to another resident by mistake.  See id.  Jones wrote to McCulloch and expressed concerns regarding his legal mail and packages.  See id. at ¶¶ 60, 65.  Moskal, the Complaint Coordinator; and Herrmann, a Complaint Specialist, responded to Jones' complaints. See id. at ¶¶ 61, 66.

## II.  DISCUSSION[7]

Liberally construed, the Amended Complaint asserts First Amendment claims against: (1) Fallon, the Director of MHLS, for refusing to provide him with counsel; (2) Sullivan, Tope, Grant, McCulloch, Nowicki, and Dill related to his access to the courts; and (3) Schuyler (the mail room clerk), Tirado (the package clerk), McCulloch, Moskal, and Herrmann related to mail interference.   See Am. Compl. at ¶¶ 29- 54, 57-64, 92-126;.

Fallon individually moves to dismiss the Amended Complaint arguing that Jones' First Amendment claims against her fail to state a cause of action.  See Dkt. No. 36-1 at 6-11.  Sullivan, Tope, Grant, McCulloch, Nowicki, Dill, Moskal, Herrmann, Schuyler, and Tirado separately move to dismiss the Amended Complaint arguing that (1) Jones' First Amendment claim related to his access to the courts is subject to dismissal for failure to state a claim; and (2) Jones failed to sufficiently plead a First Amendment claim related to interference with his legal mail.  See Dkt. No. 38-1 at 9-20.

---

[7]  All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

## A.  Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."));  see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal quotation marks and citation omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se*
> litigant is entitled to special solicitude, that a *pro se* litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments that
> they suggest.  At the same time, our cases have also indicated
> that we cannot read into *pro se* submissions claims that are not
> consistent with the *pro se* litigant's allegations, or arguments
> that the submissions themselves do not suggest, that we should
> not excuse frivolous or vexatious filings by *pro se* litigants, and
> that *pro se* status does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court

is obligated to construe his pleadings liberally.") (internal quotation marks and citations

omitted).

Jones failed to oppose the motion despite being warned of the consequences of

failing to respond.  See Dkt. Nos. 37 and 39.  A plaintiffs "failure to oppose a 12(b)(6)

motion cannot itself justify dismissal of a complaint."  Haas v. Commerce Bank, 497 F.

Supp. 2d 563, 564 (S.D.N.Y. 2007) (Citing McCall v. Pataki, 232 F.3d 321, 322 (2d Cir.

2000) (additional citation omitted)).  As the Second Circuit has stated:

> although a party is of course to be given a reasonable
> opportunity to respond to an opponent's motion, the sufficiency
> of a complaint is a matter of law that the court is capable of
> determining based on its own reading of the pleading and

9

> knowledge of the law.  If a complaint is sufficient to state a claim
> on which relief can be granted, the plaintiff's failure to respond
> to a Rule 12(b)(6) motion does not warrant dismissal.

McCall, 232 F.3d at 322-23.

## B.  Claims Against Fallon

### 1.  Private Actor

Fallon moves to dismiss the First Amendment claims against her arguing that she is

not a "state actor" for the purposes of Section 1983.  See Dkt. No. 36-1 at 6-8.

A plaintiff cannot hold a defendant liable under Section 1983 unless he or she can

establish that the defendant acted under color of state law.  See 42 U.S.C. § 1983; see also

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (noting state action

requirement under Section 1983).  As the Supreme Court has held, "the under-color-of-

state-law element of § 1983 excludes from its reach merely private conduct, no matter how

discriminatory or wrongful."  Sullivan, 526 U.S. at 50 (internal quotation marks and citations

omitted).  A plaintiff "bears the burden of proof on the state action issue."  Hadges v.

Yonkers Racing Corp., 918 F.2d 1079, 1083 n.3 (2d Cir. 1990).

Court-appointed attorneys do not act under color of state law merely by virtue of

their appointment.  See, e.g., Polk County v. Dodson, 454 U.S. 312, 325 (1981) (holding

that a county public defender does not act under color of state law when performing

traditional advocacy functions in a criminal proceeding).  Courts in this Circuit have

concluded that MHLS attorneys are not state actors.  See Fisk v. Letterman, 401 F. Supp.

2d 362, 378 (S.D.N.Y. 2005) ("Courts have clearly and consistently held that

10

court-appointed attorneys do not act under color of state law by virtue of their appointment. This is true even if the attorney is employed by the [MHLS] . . . ." (internal citations omitted)); see also Scott v. Djeck, 5:09-CV-1122 (GTS/GHL), 2010 WL 145297, at *4 (N.D.N.Y. Jan. 11, 2010) ("An attorney employed by M.H.L.S. is not a state actor for purposes of § 1983").  "Thus, unless a court-appointed attorney conspires with a state official to violate the plaintiff's constitutional rights, that attorney cannot be liable under Section 1983. " Fisk, 401 F. Supp. 2d at 378.  However, the Second Circuit has repeatedly emphasized that "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983).  "For claims of § 1983 . . . conspiracies to survive a motion to dismiss, the plaintiff must provide some factual basis supporting a meeting of the minds." Butler v. Hesch, 286 F. Supp. 3d 337, 363 (N.D.N.Y. 2018) (internal quotation marks and citations omitted).

Fallon argues that, as an attorney employed by MHLS, she cannot be liable under section 1983 unless she conspired with state actors to deprive Jones of a federally protected right.  See Dkt. No. 36-1 at 6-8.  In this regard, Fallon moves to dismiss the Amended Complaint arguing that Jones has not sufficiently alleged the existence of a conspiracy.  See id. at 8-10.  This argument is of no moment.  Plaintiff does not allege that the MHLS defendants conspired with state officials.  See generally Amen. Compl.  In any event, Plaintiff identified McCormick and Fontino as attorneys for MHLS, see id. at 3, and those defendants were dismissed pursuant to 28 U.S.C. 1915(e)(2)(B) in the August Order. See Dkt. No. 10 at 18-19.  Significantly, however, the August Order observed that the

Amended Complaint contended that Fallon failed to provide necessary legal representation at the annual evaluation and review and that, although MHLS maintained that they could not represent him at his annual examination or review, MHLS continued to accept documents from OMH on Plaintiff's behalf. See Am. Compl. at 6, 7, 8, 9, 16, 17. Therefore, the Court held, Plaintiff's allegations that Fallon engaged in administrative activities precluded a finding of quasi-judicial absolute immunity and directed that Fallon provide a response to Plaintiff's First Amendment access-to-courts claims related to Plaintiff's annual evaluation and review. See Dkt. No. 10 at 20.

     In her motion, Fallon did not address her administrative role and her memorandum of law lacks any argument related to this issue. See generally Dkt. No. 36-1. Thus, because the decision to deny Jones counsel, if true, is not within the scope of the "traditional function" of counsel, the undersigned recommends denying Fallon's motion insofar as she contends that she is a MHLS attorney and thus, did not act under the color of state law. See Brown v. Kopek, No. 6:11-CV-00016 (LEK/GHL), 2011 WL 3737921, at *6 (N.D.N.Y. Aug. 24, 2011) (holding that the decision to deny counsel, "cannot be considered within the scope of a public defender's traditional functions as counsel in a criminal proceeding."); see also Fox v. Zennamo, No. 6:15-CV-0587 (LEK/ATB), 2016 WL 1090583, at *2 (N.D.N.Y. Mar. 18, 2016) ("The Supreme Court has held that public defenders only act under color of law in limited circumstances: for example, when making hiring and firing decisions on behalf of the State, performing certain administrative and possibly investigative functions, or for malpractice under state tort law." (internal quotation marks, citations, brackets, and ellipses omitted)).

## 2. Personal Involvement

Fallon also argues that Jones' conclusory allegations against her do not plausibly state a claim because she was not personally involved in any constitutional violation. See Dkt. No. 36-1 at 9.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Further, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a [supervisory] official may not be found liable for a constitutional violation merely because of the acts of those under his control." Kinch v. Artuz, No. 97-CV-2419 (LAP), 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing Colon, 58 F.3d at 874 and Wright, 21 F.3d at 501). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Colon, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. However, supervisory personnel may be considered "personally involved" if:

> (1) the defendant participated directly in the alleged constitutional violation;

13

> (2) the defendant, after being informed of the
> violation through a report or appeal, failed to remedy
> the wrong;
>
> (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or
> allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in
> supervising subordinates who committed the
> wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to
> the rights of inmates by failing to act on information
> indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright, 21 F.3d at 501

(additional citation omitted)).[8]   Assertions of personal involvement that are merely

speculative are insufficient to establish a triable issue of fact.  See Brown v. Artus, 647 F.

Supp. 2d 190, 200 (N.D.N.Y. 2009).  Fallon argues that Plaintiff has failed to plead facts

suggesting that she was aware of his civil confinement or his request for representation,

and that she was not involved in any decisions made with respect to his legal

representation.  See Dkt. No. 36-1 at 9.


### a.  Second Colon Factor

---

[8] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the
five Colon factors which were traditionally used to determine personal involvement.  See Pearce v. Estate
of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011) (recognizing that several District Courts in the Second
Circuit have debated Iqbal's impact on the five Colon factors), rev'd in part on other grounds sub nom.,
Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order); Kleehammer v. Monroe Cnty., 743 F.
Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass
Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal
eliminated Colon's personal involvement standard).

Liberally construed, the Amended Complaint may be read as alleging, under the second Colon factor, that Fallon was aware that MHLS had a policy of declining to provide representation to residents with a "conflict of interest" in violation of the First Amendment because "other similarly situated residents" reported the issue and she failed to remedy the wrongs. Am. Compl. at ¶¶ 33, 87, 190. Jones conclusory statements, however, are unsupported by facts or details. The Amended Complaint is devoid of any facts related to the verbal complaints by other residents including who complained, when the conversations occurred, who was involved in the conversations, or any details surrounding the complaints. Moreover, Jones does not allege that he ever personally spoke or communicated with Fallon, in any manner. Accordingly, the undersigned concludes that such conclusory allegations do not support personal involvement under the second Colon factor. See Iqbal, 556 U.S. at 681; Brown, 647 F. Supp. 2d at 200; see also Gantt v. Ferrara, No. 15-CV-7661, 2018 WL 4636991, at *7 (S.D.N.Y. Sept. 27, 2018) (dismissing supervisory liability claim premised on vague allegations of "wide spread" complaints).

### b. Third Colon Factor

Jones also claims that Fallon created a policy wherein MHLS would not provide legal representation to residents with a "conflict of interest" and that this policy is in direct conflict with MHL §§ 47.01 and 47.03, and violated Jones' First Amendment rights. See Am. Compl. at ¶¶ 33, 88, 170, 188. The third Colon category provides for personal involvement where "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." Colon, 58 F.3d at 873.

With respect to the third Colon factor, "[a] policy or custom can be explicitly established in an adopted rule or regulation, or may exist if the violative practice is persistent and widespread, and if the acts of subordinate employees imply the constructive acquiescence of senior policy-making officials." Bivona v. McLean, 9:19-CV-0303 (MAD/TWD), 2019 WL 2250553, at *3 (N.D.N.Y. May 24, 2019) (internal quotation marks and citations omitted). "Allegations that an abusive policy existed are not enough to state a claim." Id. (internal quotation marks and citation omitted). "Rather, a plaintiff must allege facts that suggest how and when the supervisory defendant was on notice of previous incidents." Id. (internal quotation marks and citation omitted).

Here, Jones' allegations regarding the creation of a policy are too conclusory to plausibly state a claim. Jones has not alleged any facts regarding other instances where MHLS failed to provide a resident with representation due to a conflict of interest and, as discussed supra, the Amended Complaint lacks an explanation or description of the alleged conflict of interest. Accordingly, the facts do not support Fallon's personal involvement under the third Colon factor. See Gantt, 2018 WL 4636991, at *7 (holding that the plaintiff's conclusory allegations that the defendant created "a policy or custom of ignoring proper procedures" were insufficient to withstand motion to dismiss.).

To the extent that Jones asserts that Fallon was in a position of power and thus, she was involved with all aspects of MHLS' legal representation, that claim is insufficient to establish personal involvement. Attempts to establish personal involvement based upon the supervisory role that Fallon occupied is inappropriate. See Black , 76 F.3d at 74; Colon, 58 F.3d at 874; see also Pecou v. Hirschfeld No. 07-CV5449 (SJF), 2008 WL

957919, at *2 (E.D.N.Y. Apr. 3, 2008) (dismissing claim against the Commissioner of Mental Health for lack of personal involvement where the plaintiff failed to allege any direct personal involvement or identify any specific acts or failures to act attributable to her). Accordingly, it is recommended that Fallon's motion to dismiss be granted for lack of personal involvement.

### C. First Amendment Access to Court Claims

Jones asserts First Amendment claims against Sullivan, Tope, Grant, McCulloch, Nowicki, and Dill, alleging that the law library, photocopy policy, and telephone policy at CNYPC are "unreasonable" and "inadequate" and impeded his access to the courts. Am. Compl. at ¶¶ 176-78.  In support of his access-to-court claims, Jones provides facts related to two legal actions: (1) a petition for a write of certiorari to the United States Supreme Court ("Supreme Court") ("Jones III") to appeal a decision from the United States Court of Appeals for the Second Circuit ("Second Circuit"), which was initiated in the District Court of the Western District of New York in Jones v. Sedita, et al., No. 16-3210 ("Jones II"); and (2) an Article 78 petition filed in the State of New York Supreme Court Appellate Division, Fourth Department.  See id. at ¶¶ 92-106.

"Prisoners have a First Amendment right of meaningful access to the courts, which requires state prisons 'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Bellezza v. Holland, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)).  This includes an adequate law library or adequate assistance from persons

trained in the law for the preparation and filing of meaningful legal papers.  See Bounds,

430 U.S. at 828.  However, "[t]his right of access . . . guarantees a prisoner no more than

reasonable access to the courts." Tafari v. McCarthy, 714 F. Supp. 2d 317, 345 (N.D.N.Y.

2010) (internal quotation marks and citation omitted); see also Carolina v. Rubino, 644 F.

App'x 68, 71 (2d Cir. 2016) (summary order) ("This right is not unlimited.").

     "To state a claim for denial of access to the courts, a plaintiff must assert

non-conclusory allegations demonstrating both (1) that the defendant acted deliberately

and maliciously, and (2) that the plaintiff suffered an actual injury." Lasher v. Dagostino,

No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (citing Lewis,

518 U.S. at 353).  "A hypothetical injury is not sufficient to state a claim for violation of the

right of access to the courts." Amaker v. Haponik, No. 98-CV-2663 (JGK), 1999 WL 76798,

at *3 (S.D.N.Y. Feb.17, 1999).  Instead, a plaintiff must demonstrate "actual injury" by

establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim.

Lewis, 518 U.S. at 349, 351.  "To satisfy the requirement that the underlying claim not be

frivolous, a plaintiff must describe the claim well enough for the court to determine whether

the claim had an arguable basis in either law or fact." Zeigler v. New York, 948 F. Supp. 2d

271, 294 (N.D.N.Y. 2013) (internal quotation marks and citation omitted).

### a.  Supreme Court Action[9]
### Jones v. Sedita, III, et al., No. 18M19 ("Jones III")

---

[9]  Because the parties did not include any documents relating to Jones' Western District case,
appeal to the Second Circuit, or motions to the Supreme Court of the United States, the facts and
procedural history relating to his petition for writ of certiorari relating to Jones III are taken from the
Amended Complaint, Defendants' motions, and the Court's August 2019 Order on initial review, which culled
the facts from documents contained in the dockets of those cases.  See Dkt. No. 10 at 14-16.

In January 2017, the Second Circuit dismissed Jones' appeal from an order and judgment filed in the United States District Court for the Western District of New York ("Jones II").[10]  As relevant here, in December 2017, the Second Circuit issued a Mandate dismissing Plaintiff's appeal, stating that it "lacks an arguable basis either in law or in fact." Dkt. No. 10 at (citing Jones II, Dkt. No. 15).  In October 2017, Jones attempted to file an application in the Supreme Court seeking an extension of time to file a writ of certiorari seeking review of the Second Circuit's decision ("Jones III").  See Amen. Compl. at ¶ 103; Dkt. No. 10 at 15.  In December 2017, the Clerk of the Supreme Court rejected plaintiff's submission as untimely.  See Amen. Compl. at ¶ 103; Dkt. No. 10 at 15.  In January 2018, Jones filed an "extraordinary writ of mandamus" in support of Jones III.  See Dkt. No. 10 at 15.  In March 2018, the Supreme Court rejected plaintiff's submission, explaining that "an extraordinary writ of mandamus may only request the Court to order a lower court to take a particular action."  Dkt. No. 10 at 15; see Amen. Compl. at ¶ 103.  After speaking with the Supreme Court Clerk, Jones filed a motion for permission for leave to file a late petition for writ of certiorari in the Supreme Court.  See Dkt. No. 10 at 15.  On June 6, 2018, Jones' papers were returned because he failed to include the petition for a writ of certiorari.  See id.  In July 2018, Jones filed a motion in seeking leave to "file an out of time petition for writ of certiorari" and included his writ of certiorari.  Id.  On October 1, 2018, Jones' motion was denied.  See Jones v. Sedita, No. 18M-19, 139 S. Ct. 301, 202 L. Ed. 2d 11 (Oct. 1, 2018) (mem) ("Jones III"); Dkt. No. 10 at 15; Amen. Compl. at ¶ 105.

---

[10]  The order was issued in Jones' civil rights action that challenged New York's Criminal Procedural law as unconstitutional.  See Jones v. Sedita, No. 1:16-CV-398, Dkt. No. 3.  In August 2016, the Western District dismissed the action, with prejudice.  See id.

19

Plaintiff argues that, based on "the numerous delays [he] encountered . . . and his inability to submit the proper papers because of lack of proper information and a law library that was totally useless," he was "hindered . . . from getting [his] petition to the U.S. Supreme Court [in support of <u>Jones III</u>] with the proper motion."  Amen. Compl. at ¶ 106.  In support of their motion to dismiss, Defendants argue that the Amended Complaint contains only "conclusory allegations that [Jones] was unable to pursue an appeal to the U.S. Supreme Court [because of] the inadequacy of the law library."  Dkt. No. 38-1 at 15.  In addition, Defendants argue that Jones cannot satisfy the second prong of an access-to-courts claim because the Second Circuit found that Jones' appeal lacked merit and, therefore, he "has not sufficiently alleged that the Supreme Court petition was "nonfrivolous."  Dkt. No. 38-1 at 16.

Here, as Defendants argue, the Amended Complaint fails to plausibly assert a First Amendment access-to-the-courts claim based on plaintiff's allegations concerning <u>Jones III</u>. <u>See</u> Dkt. No. 38-1 at 15-16.  Although the Amended Complaint contains conclusory allegations that the law library resources and that CNYPC's telephone policy was deficient, it fails to allege that Defendants acted deliberately or maliciously; indeed, the Amended Complaint contains no factual allegations concerning Defendants' intent whatsoever.  <u>See</u> Amen. Compl. at 102-106.  Further, the Amended Complaint directly contradicts Jones' claim that CNYPC's telephone policy impeded Jones' ability to file documents in the Supreme Court, as Jones concedes that, in June 2018, he was "able to have the U.S. Supreme Court phone number placed on [his] phone list" and that he placed a call to the Supreme Court Clerk's Office to receive instruction on how to proceed.  <u>Id.</u> at 105; <u>see</u>

Oliva v. Town of Greece, 630 F. App'x 43, 45 (2d Cir. 2015) (summary order) (holding that "conclusory assertions, which are undercut by other allegations in the complaint, appended to it, or incorporated within it, are not sufficient to plausibly allege causation." (citations omitted)).

Thus, Jones has failed to establish the first element of a First Amendment access-to-the-courts claims.  See Lasher, 2016 WL 1717205, at *4 (citing Lewis, 518 U.S. at 353).

Moreover, Defendants correctly argue that Jones has also failed to establish "actual injury" because the Amended Complaint is devoid of any facts suggesting that the legal claim he sought to pursue in the Supreme Court in Jones III was nonfrivolous.  See Dkt. No. 38-1 at 15-16.  The Amended Complaint contains no description of the claims Jones sought to pursue before the Supreme Court in Jones III; rather, the Court was forced to cull the procedural history of Jones II and Jones III from the separate dockets of those cases and the parties' pleadings.  See supra, n.9; Dkt. No. 10 at 14-16.  Thus, the Amended Complaint fails to "describe the claim[s] well enough for the [C]ourt to determine whether the claim[s] had an arguable basis in either law or fact." Zeigler, 948 F. Supp. 2d at  294. In any event, the Second Circuit's Mandate dismissing Plaintiff's appeal in Jones II, which stated that his appeal "lack[ed] an arguable basis either in law or in fact," made clear that the claims Jones sought to pursue were frivolous and, thus, belies any assertion that the purportedly deficient law library or phone policy hindered Jones from pursuing non-frivolous claims.  Dkt. No. 10 at (citing Jones II, Dkt. No. 15).  Accordingly, it is recommended that Jones' First Amendment access-to-the-courts claim be dismissed insofar as it is based on Jones III.

### b. Article 78 Petition

In further support of his access-to-the-courts claim, Jones argues that his "poor person application," filed in connection with an Article 78 petition, was denied because he was unable to provide the "required number of copies." Am. Compl. at ¶¶ 99, 101. Defendants argue that Jones failed to sufficiently allege that he suffered an "actual injury" with respect to the Article 78 petition. Dkt. No. 38-1 at 16.

In January 2018, Jones filed an Article 78 petition in New York State, Supreme Court, Erie County, seeking to compel a judge to "perform his duties enjoined by law in making a written decision on [Plaintiff's] motion seeking relief pursuant to CPLR §§ 4404(b) and 5015 relating to [Plaintiff's] Article 10 proceeding." Am. Compl. at ¶ 97. Jones' documents were returned with instructions to file the petition in the Appellate Division. See id. In February 2018, Jones filed his petition and application for "poor person relief" in the Fourth Department. Id. at ¶ 99. In March 2018, the Clerk returned the documents and directed Jones to serve the Erie County Attorney and State Attorney General. See id. at 100. In April 2018, Jones resubmitted his petition and "poor person application" and served all necessary parties. Id. at ¶ 101. In connection with the application, Jones submitted his prior affidavit, dated January 2018, rather than an updated affidavit, dated February 2018, because he was unable to provide the required number of copies due to insufficient funds. See id. In May 2018, the court denied his "poor person application," citing inadequate and outdated information. Id.

Courts in this Circuit have held that an Article 78 proceeding may serve as grounds for an access to court claim. See Collins v. Goord, 438 F. Supp. 2d 399, 417 (S.D.N.Y.

2006) (concluding that "an Article 78 petition that challenges an inmate's remand to SHU confinement is an action for which access to the courts is constitutionally guaranteed."). However, Jones fails to satisfy the first element of a First Amendment access-to-the-courts claim in connection with his Article 78 petition.  Jones claims that when he arrived at CNYPC, he had "limited funds to purchase writing materials, mak[e] copies, and postage[.]" Am. Compl. at  ¶ 98.  Jones claims that CNYPC did not have a "policy or procedure to address [his] concerns" and that due to his lack of funds, he "could not afford to make the necessary copies required [by] the court" or affix the required postage. Id. at  ¶¶  98-99. Jones concedes, however, that he submitted his original "poor person" application to the wrong court and that when he resubmitted the application to the Fourth Department, he provided the original affidavit prepared in January 2018, rather than an updated affidavit, because he did not have the funds to provide the number of copies. Id. at 99-101.  In this regard, Jones makes only conclusory allegations and does not state a specific instance where he requested, and was denied, writing materials, photocopies, or postage. See, e.g., Desmarat v. Artus, No. 9:08-CV-977 (DNH/RFT), 2011 WL 1564605, at *6 (N.D.N.Y. Mar. 25, 2011) (holding that the fact that a facility does not "allow an inmate unfettered access to a photocopier does not diminish nor render unconstitutional the efforts the facility has taken to ensure adequate and meaningful access") (citation omitted)).  Thus, Jones has not pleaded that any deliberate action or inaction by Defendants caused him to submit outdated information to the court; thus, Jones has failed to proffer facts sufficient to establish the first element of an access to courts claim based on his Article 78 proceeding. See Lewis, 518 U.S. at 351.

Further, Jones' reliance upon his Article 78 proceeding suffers from the same infirmities as his claim related to the Supreme Court action in <u>Jones III</u>–the Amended Complaint is bereft of any facts establishing that the claim underlying his Article 78 proceeding was meritorious.  <u>See</u> <u>Cancel v. Goord</u>, No. 00-CV-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").  Moreover, the fact that his "poor person application" was denied, without more, does not demonstrate actual harm.  <u>See</u>, <u>e.g.</u>, <u>Ashline v. Martinez</u>, No. 3:05-CV-1028 (SRU), 2006 WL 141629, at *3 (D. Conn. Jan. 18, 2006) (dismissing the plaintiff's federal access to court claim based on the purported denial of his application to waive the filing fee for a small claims action in state court).  Accordingly, it is recommended that Jones' First Amendment access-to-the-courts claim be dismissed insofar as it is based on his Article 78 proceeding.

## D. First Amendment Mail Tampering Claims

Construing the Amended Complaint liberally, Jones claims that Schuyler and Tirado tampered with his mail in violation of his First Amendment rights.  <u>See</u> Amen. Compl. at ¶¶ 57-69.[11]  Jones also alleges that McCulloch, Moskal, and Herrmann were personally

---

[11] Defendants Schuyler and Tuado were identified in the Amended Complaint as Doe Mail Clerk and Doe Package Clerk, respectively.  <u>See</u> Amen. Compl. at 1.  Plaintiff subsequently named them in a USM-285 form filed with the Court on September 4, 2019.  <u>See</u> Dkt. Nos. 17, 18.

involved in the constitutional violations, pursuant to the second Colon factor, because they failed to remedy the situation after becoming aware of the violations. See id. at ¶¶ 57-67.

"A patient who is committed to a psychiatric institution has a 'right to the free flow of incoming and outgoing mail . . . protected by the First Amendment.'" Vallen v. Pierre, No. 13-CV-6541, 2017 WL 627413, at *2 (E.D.N.Y. Feb. 14, 2017) (quoting Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)); see Ahlers v. Rabinowitz, 684 F.3d 53, 64 (2d Cir. 2012) (applying standards set forth in Davis in civil commitment context)). "Legal mail is entitled to greater protection from interference than nonlegal mail." Burroughs v. Petrone, 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015) (citing Davis, 320 F.3d at 351). To establish a claim under the First Amendment for mail tampering, an "inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." Davis, 320 F.3d at 351 (internal quotation marks and citation omitted). However, "[a] single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge." Burroughs, 138 F. Supp. 3d at 210 (citing Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975)). In such cases, "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." Davis, 320 F.3d at 351 (citations omitted).

Here, Jones has alleged three instances of purported mail interference. See Amen. Compl. at ¶¶ 57-67. Defendants move for dismissal of Jones' mail interference claims, arguing that Jones has failed to plead that Defendants' personal involvement. See Dkt. No.

25

38-1 at 11.  Further, Defendants argue that Jones has not sufficiently alleged "invidious intent," and has failed to plead that he suffered any "actual harm."  Id.

### 1.  Schuyler and Tirado

While Schuyler (the mail clerk) and Tirado (the package clerk) are identified in the caption and list of parties, they are not mentioned in the body of the Amended Complaint and Jones neither advances any arguments nor proffers any factual support to establish Schuyler's or Tirado's personal involvement.  See generally Amen. Compl.  Consequently, it is recommended that the Amended Complaint be dismissed insofar as asserted against Schuyler and Tirado for failure to allege personal involvement.  See Wright, 21 F.3d at 501; Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) ("[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'") (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986) (other citation omitted)).  Moreover, the Amended Complaint is devoid of facts suggesting that these defendants acted to intentionally interfere with his mail or that the alleged mail tampering hindered or prejudiced Jones' ability to litigate any claims.  See Amen. Compl. at ¶¶ 57-67.  Jones has not described the contents of any of the mail or packages that were allegedly tampered with nor has he pleaded that he was impeded from pursuing any nonfrivolous action due to the alleged interference.  See id.  To the contrary, while Jones claims, conclusorily, that his mail was tampered with in February and March 2019, he filed the within action in January 2019 and has continued to file motions and submissions in this case.  See Quinn v. Stewart, No. 10-CV-8692 (PAE/JCF), 2012 WL 1080145, at *7

26

(S.D.N.Y. Apr. 2, 2012) (finding the plaintiff's mail interference claims belied by the fact that he litigated the within case "capably and without any evident impediment").  Accordingly, the undersigned recommends granting Defendants' motion to dismiss the First Amendment claims against Schuyler and Tirado.[12]

### 2.  Supervisory Defendants

For the reasons discussed above, plaintiff has failed to allege sufficient facts to establish a First Amendment mail tampering claim against Schuyler or Tirado; therefore, the undersigned recommends that Plaintiff's supervisory claims asserted against McCulloch, Moskal, and Herrmann based on a purported First Amendment mail tampering claim be dismissed.  See Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [the] Plaintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability").

### III.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

---

[12]  To the extent that the Amended Complaint could be construed to include a claim against Schuyler and Tirado related to Jones' access to the courts, for the reasons set forth herein and in Part II(C), that claim is also dismissed.  Thomas v. DeCastro, No. 14-CV-6409, 2018 WL 1322207, at *11 (S.D.N.Y. Mar. 13, 2018) (dismissing mail interference claim, based upon two instances of tampering, because the pleadings lacked allegations an ongoing practice, or facts suggesting that the plaintiff was "unjustifiably chilled in seeking access to the courts to prosecute, or defend against, any pending legal action." (Internal quotation marks and citation omitted)).

**ORDERED,** that the Clerk of the Court amend the docket report to substitute "Tirado" for "Tuado;" and it is further

**RECOMMENDED**, that Defendant Fallon's motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 36) be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant Sullivan's, Tope's, Grant's, McCulloch's, Nowicki's, Dill's, Moskal's, Herrmann's, Schuyler's, and Tirado's motion to dismiss based upon Fed. R. Civ. P. 12(b)(6) (Dkt. No. 38) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Amended Complaint (Dkt. No. 9) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**, and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: June 5, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

28